U.S. BANK TRUST, N.A., )
AS TRUSTEE FOR LSF9 )
MASTER PARTICIPATION TRUST )
)
      Plaintiff, )
)     2:16-cv-00617-JAW
    v. )
)
JULIA L. JONES )
)
      Defendant. )

## ORDER

A lender seeks to foreclose after a borrower defaulted on her loan payments. Because the right to cure letter overstated the amount that the borrower had to pay in order to cure her default and Maine law requires strict adherence to all statutory foreclosure requirements, including an accurate itemization of all past due amounts that caused the loan to be in default and the total amount due to cure the default, the lender is not entitled to foreclose on the property. However, the same fatal error does not apply with the lender's lawsuit on its promissory note and breach of contract counts and the Court grants the lender judgment on those counts. The Court also grants the lender's request to correct the legal description of the subject property in the mortgage deed.

## I. BACKGROUND

### A. Procedural History

On December 14, 2016, U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust (U.S. Bank), filed a civil action against Julia L. Jones, asserting that Ms. Jones had failed to pay U.S. Bank in accordance with the terms of a promissory note and demanding that the property that secured the note be foreclosed. *Compl.* (ECF No. 1). More specifically, U.S. Bank's Complaint contains six counts: (1) Count One—foreclosure; (2) Count Two—breach of note; (3) Count Three—breach of contract; (4) Count Four—quantum meruit; (5) Count Five—unjust enrichment; and (6) Count Six—reformation of mortgage. *Id.* On February 10, 2017, Ms. Jones answered the Complaint. *Def.'s Answer to Pl.'s Compl.* (ECF No. 5) (*Answer*).

On the same day, Ms. Jones moved to dismiss counts IV and V of the Complaint. *Def.'s Mot. to Dismiss Counts IV & V of Pl.'s Compl.* (ECF No. 6). The Court held oral argument on June 29, 2017. *Minute Entry for Motion Hearing* (ECF No. 15). After oral argument and upon agreement of the parties, the Court dismissed without prejudice Counts IV and V. *Order* (ECF No. 16). At a pretrial conference on September 7, 2017, the parties also agreed that U.S. Bank is entitled to the reformation it sought in Count VI. *Rep. of Final Pretrial Conference and Order* at 1 (ECF No. 23).

On November 6, 2017, a bench trial was held on Counts I, II, and III. *Minute Entry for Bench Trial* (ECF No. 29). On December 6, 2017, Ms. Jones filed a post-trial brief. *Def.'s Post Trial Mem.* (ECF No. 34) (*Def.'s Br.*). U.S. Bank filed a reply on January 12, 2018. *Pl.'s Reply to the Def.'s Post Trial Mem.* (ECF No. 36) (*Pl.'s*

*Reply*).  Contemporaneously, on December 7, 2017, U.S. Bank filed its post-trial brief. *Pl.'s Post Trial Mem.* (ECF No. 35) (*Pl.'s Br.*).  Ms. Jones filed her reply on January 16, 2018.  *Def.'s Post Trial Reply Mem.* (ECF No. 37) (*Def.'s Reply*).

### B.     Facts

U.S. Bank is a corporation organized under the laws of the state of Minnesota, with its principal place of business located at 425 Walnut Street, Cincinnati, Ohio. *Compl.* ¶ 4; *Answer* ¶ 4.  Ms. Jones is a resident of the town of Raymond, County of Cumberland, and state of Maine.  *Compl.* ¶ 5; *Answer* ¶ 5.

On July 21, 2004, James L. Jones and Linda P. Jones conveyed property situated at 139 Conesca Road, Raymond, Maine, 04071, by Warranty Deed recorded in the Cumberland County Registry of Deeds in Book 21580, Page 18, as corrected by Corrective Warranty Deed recorded in Book 22049, Page 213.  *Compl.* ¶ 6, 8; *Answer* ¶ 6, 8.

On April 17, 2007, Ms. Jones, in return for a loan, executed and delivered to Downeast Mortgage Corporation a note in the amount of $160,000.00 (the Note). *Compl.* ¶ 7; *Answer* ¶ 7; *Pl.'s Ex.* 1.  On April 18, 2007, to secure the Note, Ms. Jones executed a Mortgage Deed in favor of Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Downeast Mortgage Corporation, securing the property located at 139 Conesca Road.  *Compl.* ¶ 8; *Answer* ¶ 8; *Pl.'s Ex.* 2.  The mortgage deed is recorded in the Cumberland County Registry of Deeds in Book 25033, Page 312. *Id.*  On September 1, 2011, Ms. Jones executed a Home Affordable Modification Agreement which decreased the principal balance of the Note to $159,019.35.  *Compl.* ¶ 9; *Answer* ¶ 9; *Pl.'s Ex.* 3.

On June 7, 2013, MERS, as nominee for Downeast Mortgage, assigned the mortgage to Bank of America, N.A. and recorded the assignment in the Cumberland County Registry of Deeds in Book 30753, Page 215. *Pl.'s Ex.* 4. On April 1, 2015, the mortgage was further assigned to U.S. Bank, as recorded in Book 32188, Page 91. *Pl.'s Ex.* 5. The transfers were confirmed and title clarified by an order of the Maine Superior Court on July 19, 2016. *Pl.'s Ex.* 6.

On August 3, 2016, Caliber Home Loans, Inc., as servicer on behalf of U.S. Bank, sent Ms. Jones a Notice of Right to Cure (Demand Letter). *Compl.* ¶ 13; *Answer* ¶ 13; *Pl.'s Ex.* 7. Ms. Jones failed to make the monthly payments beginning with the one due on November 1, 2012, and Ms. Jones did not make further payments after receiving the Demand Letter. *Compl.* ¶ 15, 24; *Answer* ¶ 15, 24.

At trial, U.S. Bank sought to establish the amount due on the loan, including interest and fees, by introducing an account summary and a spreadsheet of transactions. *Pl.'s Ex.* 8. According to those records, as of November 1, 2017, Ms. Jones owed $155,409.02 in unpaid principal, $21,888.86 for an escrow account for tax and insurance payments, $43,566.78 in uncollected interest, and $5,593.62 in other fees and costs, for a total amount due of $226,458.28. *Id.* The spreadsheet was admitted after testimony from a records custodian from Caliber Home Loans, Inc., Letycia Lopez.

Ms. Jones is still in possession of the subject property. *Compl.* ¶ 19; *Answer* ¶ 19.

## II.    THE PARTIES' POSITIONS

### A.    Julia L. Jones' Position

Ms. Jones argues that judgment must be entered against U.S. Bank because the Notice of Default and Right to Cure Letter was defective for several reasons. *Def.'s Br.* at 1; *Def.'s Reply* at 1-2.   First, Ms. Jones claims that Maine law and the terms of the mortgage require the mortgagee—not the servicer—send the notice. *Def.'s Br.* at 2.   Second, she contends that the figures in the demand letter were incorrect because the total included $2638.32 in a "Corporate Advance Balance" line item, which she maintains was for attorney's fees and costs that U.S. Bank had no right to recoup from her.  *Id.* at 2-3.

Ms. Jones also asserts that U.S. Bank's Exhibit 8, the spreadsheet of transactions for her loan, was not properly admitted into evidence or should be accorded no weight for several reasons.  *Id.* at 3.   First, Ms. Jones argues that Ms. Lopez's testimony about the "boarding"—or records transfer—of Ms. Jones' loan from a previous servicer must be disregarded and stricken as hearsay because the boarding occurred on November 11, 2014, more than a year before Caliber hired her.  *Id.; Def.'s Reply* at 2.   Second, she contends that U.S. Bank has not adequately authenticated the document because there was no testimony about the fidelity of the printout to the electronic database and the blacked out account number on the printout indicates it does not "accurately reflect the electronic information it purported to demonstrate." *Def.'s Br.* at 4.

Ms. Jones sees a number of discrepancies in the loan records which undermine their reliability.   Ms. Jones says that Caliber's late charges total $432.81 in its

demand letter but total $1442.70 in its September 13, 2017 spreadsheet, *Def.'s Ex. 1*, even though the charges should cover the same period. *Def.'s Br.* at 4-5. Ms. Jones suggests there is also a discrepancy between the per diem interest rates on Caliber's spreadsheets, *Pl.'s Ex.* 8, *Def.'s Ex.* 1, and a letter from the previous servicer, Seterus, *Def.'s Ex.* 2, and says the interest totals for the period are mathematically incorrect because they are not even multiples of the per diem interest amount. *Def.'s Br.* at 5-6; *Def.'s Reply* at 3.

Finally, Ms. Jones urges the Court to avoid a cursory analysis of the business records exception, particularly because "the party offering the records did not actually create those records," but merely received them from a separate entity without "knowledge of the transmitting entity's recordkeeping practices . . . ." *Def.'s Br.* at 6-9; *Def.'s Reply* at 3. She is skeptical of so-called "integration" of business records, whereby some courts admit business records of a previous entity because a subsequent entity incorporated those records and relied upon them. *Def.'s Br.* at 6-9; *Def.'s Reply* at 3 (citing *Keybank N.A. v. Quint*, 2017 ME 237, 176 A.3d 717).

### B.    U.S. Bank's Position

U.S. Bank maintains that its demand letter gave proper notice under Maine law. *Pl.'s Br.* at 6-7; *Pl.'s Reply* at 1-2. It suggests, "Maine courts have neither discussed nor adopted" a requirement that the lender specifically, as opposed to the lender's servicer as its agent, mail the letter to the borrower. *Pl.'s Br.* at 6-7; *Pl.'s Reply* at 1-2. U.S. Bank asserts that it has met all of the elements for foreclosure, but that even if the court determines otherwise, it is still entitled to relief on its underlying contract claims contained in Counts II and III. *Pl.'s Br.* at 7-9.

Regarding the per diem interest calculation, U.S. Bank explains that it "can be calculated by multiplying the principal amount of the loan . . . by [the] (annual percentage rate of interest), and dividing by 365." *Id.* at 9 (quoting *Frazier v. HSBC*, 401 Fed. Appx. 436, 468 n. 2 (11th Cir. 2010). U.S. Bank maintains that the $23.42 figure in its spreadsheets is correct. *Id.*

Regarding the redaction of the financial account number, U.S. Bank insists that it was only complying with Federal Rule of Civil Procedure 5.2 to protect the plaintiff's privacy, and that U.S. Bank should not be penalized because that would lead to an absurd result. *Pl.'s Reply* at 3. It argues that there is no genuine question that the duplicate document accurately reflects Caliber's original electronic records. *Id.* at 3-4.

U.S. Bank contends that its spreadsheet was properly admitted into evidence pursuant to Federal Rule of Evidence 803(6), the business records exception to the hearsay prohibition. *Pl.'s Br.* at 5-6. It explains that Ms. Lopez can testify about the reliability of the records even though she was not yet employed at Caliber when the documents were created, because the witness need not be the person who actually prepared the record, so long as the witness can explain and be cross examined concerning the manner in which the records are made and kept. *Pl.'s Reply* at 2-3.

## III. DISCUSSION

### A. Maine's Foreclosure Requirements

There are eight elements of proof that a plaintiff must meet in order to support a judgment of foreclosure under 14 M.R.S. § 6321:

[1] the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any;

[2] properly presented proof of ownership of the mortgage note and evidence of the mortgage note and the mortgage, including all assignments and endorsements of the note and the mortgage;

[3] a breach of condition in the mortgage;

[4] the amount due on the mortgage note, including any reasonable attorney fees and court costs;

[5] the order of priority and any amounts that may be due to other parties in interest, including any public utility easements;

[6] evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements;

[7] after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules; and

[8] if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act.

*Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700 (internal modifications and footnotes omitted) (numbering supplied) (quoting *Chase Home Finance LLC v. Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508. The Maine Supreme Judicial Court has also repeatedly emphasized that "[a] plaintiff seeking a foreclosure judgment 'must comply strictly with all steps required by statute.'" *Id.*

### B. Notice of Default and Mortgagor's Right to Cure

Element six requires lenders to strictly comply with the requirements of 14 M.R.S. § 6111. That notice provision applies "[w]ith respect to mortgages upon residential property . . . when the mortgagor is occupying all or a portion of the property as the mortgagor's primary residence and the mortgage secures a loan for personal, family or household use . . . ." 14 M.R.S. § 6111(1). In those cases, "the mortgagee may not accelerate maturity of the unpaid balance of the obligation or

otherwise enforce the mortgage because of a default . . . until at least 35 days after the date that written notice . . . is given by the mortgagee to the mortgagor. . . ." *Id.* The written notice must include:

A.  The mortgagor's right to cure the default . . .;
B.  An itemization of all past due amounts causing the loan to be in default and the total amount due to cure the default;
C.  An itemization of any other charges that must be paid in order to cure the default;
D.  A statement that the mortgagor may have options available other than foreclosure, that the mortgagor may discuss available options with the mortgagee, the mortgage servicer or a counselor approved by the United States Department of Housing and Urban Development and that the mortgagor is encouraged to explore available options prior to the end of the right-to-cure period;
E.  The address, telephone number and other contact information for persons having authority to modify a mortgage loan with the mortgagor to avoid foreclosure, including, but not limited to, the mortgagee, the mortgage servicer and an agent of the mortgagee;
F.  The name, address, telephone number and other contact information for all counseling agencies approved by the United States Department of Housing and Urban Development operating to assist mortgagors in the State to avoid foreclosure;
G.  Where mediation is available . . . a statement that a mortgagor may request mediation to explore options for avoiding foreclosure judgment; and
H.  A statement that the total amount due does not include any amounts that become due after the date of the notice.

14 M.R.S. § 6111(1-A).

### 1.  Caliber's mailing of the demand letter did not make U.S. Bank's notice defective.

Ms. Jones' first argues that the demand letter was defective because the lender's servicer, Caliber, rather than the lender, U.S. Bank, sent the notice. This argument rests on a particularly stringent parsing of the phrase in the statute requiring "that written notice . . . is given by the *mortgagee* to the mortgagor. . . ." 14 M.R.S. § 6111(1) (emphasis supplied). Ms. Jones points to no case, however, where a

Maine court has found a demand letter defective because it was sent by the mortgagee's servicer, rather than the mortgagee. Furthermore, such a narrow interpretation ignores well established agency principles without any indication that the Maine Legislature intended this result. Even with the Maine Supreme Judicial Court's instruction that lenders are to strictly comply with the requirements of the statute, in an industry where lenders often hire servicers to handle loans, including foreclosures, the Court does not predict that Maine courts would block foreclosures based on such a cramped and impractical interpretation of the statute.

> **2.    U.S. Bank's notice was defective because it did not accurately state the amount Ms. Jones needed to pay in order to cure her default.**

Ms. Jones' second argument regarding the demand letter is that it was defective because the numerical totals in the demand letter did not accurately state the amounts she was required to pay to cure the default. Subparagraphs B and C of § 6111 require an "itemization" of the amounts the debtor must pay. The Maine Supreme Judicial Court indicates that "the amount due as stated in the notice of default is the precise amount that the mortgagor has thirty-five days to pay in order to cure the default . . . ." *Greenleaf*, 2014 ME 89, ¶ 31, 96 A.3d 700 (invalidating a demand letter because it did not state the precise amount of fees due). The Court agrees with Ms. Jones that § 6111 implicitly requires an accurate or "precise" itemization. The Maine Legislature could hardly have intended to force lenders to send notices itemizing the amounts for the borrower's right to cure to the borrower while also allowing lenders to foreclose even if those amounts are inaccurately inflated.

U.S. Bank's August 3, 2016 notice of default and right to cure letter contained this itemization:

| | | |
|---|---|---|
| Next Payment Due Date: | | 11/01/2012 |
| Total Monthly Payments Due for 46 months: | | $60,219.06 |
|     Principal: | $12,749.77 | |
|     Interest: | $31,497.63 | |
|     Tax and Insurance (escrow) | $15,971.66 | |
| Late Charges: | | $432.81 |
| Other Charges: | Uncollected NSF Fees: | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balance: | $2,638.32 |
| | Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | **$63,290.19** |

*Pl.'s Ex.* 7 at 2.

Ms. Jones points out that the $2,638.32 for a "Corporate Advance Balance" appears to be attorney's fees and other costs that U.S. Bank incurred in 2015 and 2016 to clear up its title following assignments of the loan from other lenders. She insists that U.S. Bank had no right to charge her for those expenses, a contention U.S. Bank never refuted at trial and conspicuously ignored in its post-trial memoranda. *See Trial Tr.* at 42:20-47:14 (ECF No. 33). Because U.S. Bank never offered an explanation or response to Ms. Jones' challenge to that line item, the Court finds that the Corporate Advance Balance charge was in error.

Blocking a lender's foreclosure based on a mathematical or accounting error may be harsh to the mortgagee in some cases. But the Maine Supreme Judicial Court has taken a rigid approach to signal to lenders, servicers, and their attorneys that they must be thorough and meticulous when pursuing foreclosures in order to prevent a claim-preclusive judgment in favor of the borrower. *See Fed. Nat'l Mortg. Ass'n v.*

*Deschaine*, 2017 ME 190, ¶ 34, 170 A.3d 230 (citing Megan Wachspress, et al., Comment, *In Defense of "Free Houses,"* 125 Yale L.J. 1115, 1116 (2016)).[1] The Maine Supreme Judicial Court instructs that § 6111's requirement that notices include "the precise amount" a borrower must pay "is strictly enforced." *JPMorgan Chase Bank, N.A. v. Lowell*, 2017 ME 32, ¶ 13, 156 A.3d 727.

Maine's courts might adopt a de minimis or harmless error exception in the future, but the Court need not guess at that possibility in this case. In *Lowell*, the Maine Supreme Judicial Court found a demand letter defective because a reader could have interpreted its language as requiring a payment that was $2,267 more than actually required in order to cure the borrower's default. *Lowell*, 2017 ME 32,

---

[1] In *Deschaine*, the Maine Supreme Judicial Court wrote that "If we were to shield mortgagees and their attorneys from the preclusive effects of adverse judgments arising from deficient pretrial conduct, we would improperly tolerate and perhaps even foster within that limited group of parties and counsel an inappropriately casual attitude toward the processes necessary for the prompt, orderly, and fair administration of justice." *Id.* ¶ 35. For support and with apparent approval, the Maine Supreme Judicial Court cited among other things, the Yale Law Journal comment. The thesis of that scholarly commentary is:

> When addressing faulty foreclosures, courts are afraid to bar future attempts to foreclose--that is, afraid of giving borrowers "free houses." While courts rarely explain the reasoning behind this aversion, it seems to arise from a reflexive belief that such an outcome would be unjust. Courts are therefore quick to sidestep well-established principles of res judicata in favor of ad hoc measures meant to protect banks against the specter of "free houses."
>
> This Comment argues that this approach is misguided; courts should issue final judgments in favor of homeowners in cases where banks fail to prove the elements required for foreclosure. Furthermore, these judgments should have res judicata effect--thus giving homeowners "free houses." This approach has several benefits: it is consistent with longstanding res judicata principles in other forms of civil litigation, it provides a necessary market-correcting incentive to promote greater responsibility among foreclosure litigators, and it alleviates the tremendous costs of successive foreclosure proceedings.

Megan Wachspress, et al., Comment, *In Defense of "Free Houses,"* 125 Yale L.J. 1115, 1115-16 (2016)). This Court expresses no opinion on the future effect of this judgment.

¶¶ 19-21, 156 A.3d 727. Here, U.S. Bank's inclusion of the fee was unambiguous, and its overstatement was roughly $400 more than JPMorgan's in *Lowell*.

Accordingly, Ms. Jones is entitled to judgment on U.S. Bank's foreclosure claim.

## C.     The Amount Due on the Mortgage Note

U.S. Bank argues that even if it is not entitled to foreclose on the property, it is still entitled to judgment on its underlying contract claims against Ms. Jones. Ms. Jones argues that U.S. Bank failed to establish the amount due under the Note and Mortgage because its summary table and spreadsheet of transactions were not properly admitted into evidence. The dispute implicates the rules of authentication and written evidence, FED. R. EVID. 901, 1001-03, and hinges on the scope of the business records exception, *id.* 803(6), to the rule against hearsay evidence. *Id.* 801(c), 802.

### 1.     The spreadsheet was properly authenticated and does not violate the best evidence rule, nor does a redaction undermine its authenticity.

Federal Rule of Evidence 901 requires proponents to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.* 901(a). When the evidence is a writing, the so-called "best evidence rule" requires the proponent to introduce the original writing or a duplicate produced by a process or technique that accurately reproduces the original, *id.* 1001-02, unless "a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." *Id.* 1003.

Ms. Lopez testified that she reviewed the records for Ms. Jones' mortgage, *Trial Tr.* 28:9-16, and she identified Plaintiff's Exhibit 8 as the account summary and payment history. *Id.* 25:19-26:3. That is sufficient to satisfy the authentication requirements of Rule 901.

As a computer printout of a database, Plaintiff's Exhibit 8 is an original, not a copy. FED. R. EVID. 1001(d) ("For electronically stored information, "original" means any printout"); MARK S. BRODIN, JOSEPH M. MCLAUGHLIN, JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FED. EVID. § 1001.11[4] (Second ed. 2018) ("Computer printouts are originals when offered to prove the content of data stored in a computer or similar device").

Even if Plaintiff's Exhibit 8 is somehow considered a copy, it meets the requirements of a "duplicate" of the original writing. FED. R. EVID. 1001(e). Ms. Jones cites no authority for her assertion that the proponent must produce testimony to satisfy Rule 1001's requirement that a "duplicate" be the result of a "mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Every time a party seeks to introduce a printout or photocopy they need not have a witness testify about the inner workings of inkjet or laser printer technology. The duplicate "is admissible to the same extent as the original" because there is no genuine question about the authenticity of the original.[2] FED. R. EVID. 1003. Caliber redacted Ms. Jones' account number with the prior

---

[2] Ms. Jones questions the reliability or accuracy of Caliber's records describing the transactions relating to her mortgage, but that is a separate question from the records' authenticity or the fidelity of the printing process from the electronic database.

servicer of the loan, but that alone does not create a genuine question about the authenticity of the record or the fidelity of the printing process. In other words, even assuming that Plaintiff's Exhibit 8 is a duplicate, it is admissible to the same extent as the original and Ms. Jones has not presented "a genuine question about the original's authenticity" and has not raised questions that "make it unfair to admit the duplicate." FED. R. EVID. 1003.

Accordingly, the Court rejects Ms. Jones' authenticity and "best evidence" arguments and proceeds to analyze the admissibility of the document under the hearsay rules.

### 2. The Business Records Exception to the Rule Against Hearsay

The Federal Rules of Evidence generally prohibit parties from introducing any out of court assertion offered for the truth of the matter asserted, unless an exception applies. *Id.* 801(c), 802. To be admissible under the business records exception, the record must satisfy Rule 803(6), which provides that "[a] record of an act, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay if it satisfies five requirements. *Id.* 803(6). The first three requirements are that "the record was made at or near the time by—or from information transmitted by—someone with knowledge"; that "the record was kept in the course of a regularly conducted activity of a business . . ."; and that "making the record was a regular practice of that activity." *Id.* 803(6)(A)-(C). The fourth requirement of Rule 803(6) is that the first three conditions "are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with

a statute permitting certification." *Id.* 803(6)(D). The fifth, and final, requirement of Rule 803(6) is that "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." *Id.* 803(6)(E).

### 3. Ms. Lopez was qualified to establish the elements of the business records exception even though many entries were created before Caliber hired her.

Ms. Jones argues that Ms. Lopez could not testify as to the accuracy of the records because the loan boarding process occurred prior to her employment with Caliber. This argument fails because it conflates the "person with knowledge" requirement of Rule 803(6) with the "custodian or other qualified witness" requirement of the rule. The record custodian or other qualified witness does not have to be the individual with personal knowledge of the event or the one who created the business record. *Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985). If the witness had to be employed during the creation of the document, "no business could ever admit a business record under Rule 803(6) that had been created before the hiring date of its most senior employee, a proposition that is nonsensical." *See O'Leary v. InfraSource Transmission Servs. Co.*, 758 F. Supp. 2d 9, 12 n.7 (D. Me. 2010).

### 4. The late charges do not indicate a lack of trustworthiness.

Ms. Jones points out that Caliber's late charges total $432.81 in its demand letter but total $1442.70 in one of its later spreadsheets, even though the charges should cover the same period. The problem with Ms. Jones' argument is that the demand letter was sent on August 3, 2016, and that particular spreadsheet, *Def.'s Ex. 1*, was created on September 13, 2017. The simple explanation is that the figure in

the spreadsheet includes late charges that accrued after the demand letter. U.S. Bank is not entitled to charge late fees after sending the demand letter, a fact it acknowledged and rectified by dropping all late charges from its claim. But the fact that U.S. Bank included some late fees to which it was not entitled on September 13, 2017 does not undermine the trustworthiness of the spreadsheet of transactions.

### 5. The discrepancy in the per diem interest calculations does not indicate a lack of trustworthiness.

Ms. Jones points out a discrepancy between the per diem interest rates on Caliber's spreadsheets, *Pl.'s Ex.* 8, *Def.'s Ex.* 1, and a letter from a previous servicer, Seterus. *Def.'s Ex.* 2. On Caliber's spreadsheets, dated September 13, 2017 and November 1, 2017, the per diem interest is $23.42, *Pl.'s Ex.* 8, *Def.'s Ex.* 1 at 1, while Seterus' letter, dated December 11 and 16, 2012, contains a per diem interest statement of $23.46. *Def.'s Ex.* 2 at 4.

Contrary to Ms. Jones' assertions, this $0.04 discrepancy does not undermine the trustworthiness of Seterus and Caliber's record-keeping systems. The per diem interest calculation appears to be a straightforward multiplication of the principal balance and the annual interest rate, divided by the number of days in a year, 365. This calculation gives a snapshot of the interest accruing on a debt in a given day. That snapshot, however, is only useful for a narrow time period, because the per diem calculation will change as the principal balance changes. In December 2012, an interest rate of 5.50% and a principal balance of $155.657.49 yields a per diem interest amount of $23.458. In November 2017, an interest rate of 5.50% and a principal balance of $155,409.02 yields a per diem interest amount of $23.418. In

short, the per diem numbers represent different calculations, not a discrepancy in Caliber's record system as servicer of U.S. Banks's loan to Ms. Jones.

Ms. Jones also alleges that the interest totals for the period of default are mathematically incorrect because they are odd numbers when they should be even multiples of the even per diem interest amount. *Def.'s Br.* at 5-6; *Def.'s Reply* at 3. Defense counsel cleverly pointed out that an even per diem number multiplied by any whole number of days, will only yield an even interest total. But counsel was too clever by half. In this case there are two flaws in what is otherwise a generally irrefutable proposition. First, as just indicated, the per diem figure of $23.42 is the result of rounding to two decimal places. That means an odd number could result from the multiplication of the per diem figure and a whole number, depending on when Caliber's system rounded the numbers. Second, the per diem figure is only a snapshot of the interest accruing on a loan at a particular time. As a result of compounding interest and changes in the principal balance during the course of the default period, the actual interest accrued over the default period will not equal a simple multiplication of the number of days in the period and the per diem figure for the end of that period.

The Court finds no discrepancies in the interest figures.

> **6. Ms. Lopez's testimony satisfied the hearsay rules for the entries before November 15, 2014 because Caliber integrated those entries into its own records and relied upon them as its own records.**

Plaintiff's Exhibit 8 contains Caliber's account summary and spreadsheet of transactions for Ms. Jones' loan, which it took over as servicer on November 15, 2014.

*Trial Tr.* 26:19-21. The entries before that date were created by other entities, which appears to have included two other servicers, Seterus and Bank of America. The records from those entities were "boarded," or transferred, from those entities' databases to Caliber's system. *Id.* at 26:22-28:2.

Since much of the information U.S. Bank seeks to introduce was actually created by other businesses, this presents a double or triple hearsay problem. Ordinarily, when a party seeks to introduce a statement containing multiple layers of hearsay, "[e]ach link in the chain must be admissible, either because it is an admission and thus not hearsay or under some other hearsay exception." *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998). Under this logic, courts refuse to admit portions of a business's records because they were originally created by outsiders to that business, unless the underlying statements themselves qualify under an exception:

> [The defendant] argues that police notes may be admissible as business records under [Federal Rule of Evidence] 803(6), and we shall assume so for purposes of argument. But where those notes contain information from informants who are not themselves part of the business of police, that information is not admissible as an exception to the hearsay rule. The district court properly ruled that such hearsay within hearsay is not itself admissible.

*United States v. Patrick*, 248 F.3d 11, 22 (1st Cir. 2001); *see also Belber v. Lipson*, 905 F.2d 549, 552 (1st Cir. 1990) ("The mere custody by Conway of the medical records of another doctor does not incorporate them into Conway's business records. Conway had no personal knowledge about the records. He neither created the records nor did he testify about the circumstances of their composition") (internal citations omitted).

U.S. Bank invokes the so-called "integrated" business records exception to the usual hearsay approach. Ms. Lopez testified that Caliber relies on other servicers' records in its day-to-day business once it believes they are correct, and Caliber then treats the records as part of its own business records. *Id.* at 28:3-8. Most of the other circuit courts have applied the business records exception flexibly to admit records created by a different business entity once incorporated and relied upon by the business entity producing the witness to testify about the other requirements of Rule 803(6). *See, e.g., United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007); *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1344 (Fed. Cir. 1999); *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993); *Matter of Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981).

The Maine Supreme Judicial Court, under its nearly identical rule of evidence, rejected the "integrated" business records exception in similar cases:

> Except for [the borrower's] testimony that she initially received monthly bills from "Countrywide," the record is devoid of evidence concerning who serviced the loan from the date the note was executed until [the current servicer] began servicing the loan at some point in time well after March 2009. Although the witness testified about the procedures employed by [the current servicer] to check for accuracy when boarding loans from other servicers, his testimony was insufficient to establish that those prior loan servicers engaged in regular business practices that satisfy the requirements of M.R. EVID. 803(6). . . .

*Quint*, 2017 ME 237, ¶ 19, 176 A.3d 717. Under current Maine law:

> The witness who provides foundational testimony need not be an employee of the entity that created and maintained the document at issue if, for purposes of Rule 803(6), that witness has adequate knowledge of the processes used by the entity that created and preserved the document. Consequently, when a document is created by one entity and then transmitted to another, and the document is then offered as a business record pursuant to Rule 803(6), the witness must be shown to

have sufficient knowledge of both businesses' regular practices to demonstrate the reliability and trustworthiness of the information. The incorporation of one entity's record into the records of the receiving entity is not a sufficient basis, by itself, for the admissibility of that record.

*Deutsche Bank Nat'l Tr. Co. v. Eddins*, 2018 ME 47, ¶ 12, 182A.3d 1241 (internal quotations and citations omitted).

The First Circuit has not provided an unambiguous answer to the question. "Whether a third party's records . . . can be integrated into the records of the offering entity . . . for purposes of admission under the business records exception is not an issue upon which this circuit has reached a uniform conclusion." *United States v. Savarese*, 686 F.3d 1, 12 (1st Cir. 2012). Two cases support the "integrated" business records approach, *F.T.C. v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 17 n. 15 (1st Cir. 2010) and *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992), but others counsel against a special exception. *See United States v. Vigneau*, 187 F.3d 70, 75-77 (1st Cir. 1999) (declining to follow *Doe* and suggesting that *Doe* "overlooked" the normal "outsider" rule that is "well-settled in this circuit," and justifying the usual "outsider" rule because "no . . . safeguards of regularity or business checks automatically assure the *truth* of a statement *to* the business by a stranger to it . . . .") (internal citation omitted).

The Court is respectfully not persuaded[3] by the Maine Supreme Judicial Court's strict approach, and instead follows the majority of the circuit courts and

---

[3]     Maine's interpretation of its analogous rule is only persuasive authority because, with a few exceptions not applicable here, the federal procedural rules of evidence apply in federal court, even when the parties pursue a substantive issue of state law. *See Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 8 (1st Cir. 2011); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 69 (1938).

admits Caliber's spreadsheet, including those entries corresponding to records that prior servicers originally created. The Court's survey of the caselaw indicates that federal courts generally admit the underlying entity's records "where an organization incorporated the records of another entity into its own, relied upon those records in its day-to-day operations, and where there are other strong indicia of reliability." *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999); *In re Ollag Constr. Equip.*, 665 F.2d at 46 ("[U]nder Rule 803(6) business records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations"); *Monty v. United States Bank, N.A.*, No. 5:15-cv-97, 2015 U.S. Dist. LEXIS 143834, at *14-19 (D. Vt. Oct. 22, 2015); *Foregger v. Residential Credit Solutions, Inc.*, No. 12-11914-FDS, 2014 U.S. Dist. LEXIS 46795, *15, n.7 (D. Mass. Apr. 4, 2014). In fact, in a recent case in the District of Maine, the district court admitted a similar record under Rule 803(6) over the same objection. *Citibank, N.A. v. York*, No. 2:17-cv-90-GZS, 2018 U.S. Dist. LEXIS 88817, at *6 (May 27, 2018).

Financial institutions and servicers have an obvious incentive to accurately document transactions and maintain reliable records to account for the status of their loans and to preserve their ability to collect debts in the event of default. While each servicer might not independently investigate the entire transaction history, Ms. Lopez testified that Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records

during the boarding process before placing its own financial interest at stake by relying on those records. *See e.g. Trial Tr.* 59:22-25, 60: 17-19.

Finally, Rule 803(6) applies only if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." FED. R. EVID. 803(6); *Monty*, 2015 U.S. Dist. LEXS 143834, at *18. Here, Ms. Jones has not produced any evidence that the integrated records are untrustworthy. The Maine Supreme Judicial Court approach in *Deutsche Bank* makes eminent sense if the opponent of admission has raised issues under Rule 803(6)(E) that "would require the testimony of a person of both businesses' regular practices to demonstrate the reliability and trustworthiness of the information." *Eddins*, 2018 ME 47, ¶ 12. Absent such a showing, the Court's view is that the integrated bank records are sufficiently reliable for admission based on the unrebutted testimony of Ms. Lopez.[4]

---

[4] There is a slight difference in language between Maine Rule of Evidence 803(6) and Federal Rule of Evidence 803(6) as to the allocation of the burden to show trustworthiness or lack of trustworthiness. Maine Rule of Evidence 803(6) reads:

> A record of an act . . . [is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness,] if: . . .
> (E) Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

*Eddins*, 2018 ME 47, ¶ 11, n.5 (quoting ME. R. EVID. 803(6)). Federal Rule of Evidence 803(6) reads:

> A record of an act . . . [is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness,] if: . . .
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

FED. R. EVID. 803(6)(E).

The slightly different language seems to reflect a different allocation as to whether the proponent of the record bears the burden of showing trustworthiness or the opponent bears the burden

A focus on financial reliance and other indicia of trustworthiness for integrated business records also raises the residual exception to the hearsay prohibition. Rule 807 allows the admission of hearsay statements, even when no other exception applies, if:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

FED. R. EVID. 807(a).

The portions of Caliber's spreadsheet containing entries originally created by other servicers satisfy the elements of the residual exception. As just explained, Caliber's accuracy checks, incorporation, and financial reliance are equivalent circumstantial guarantees of trustworthiness. That is particularly true where, as here, the borrower does not dispute the transaction history by claiming overbilling or

---

of showing a lack of trustworthiness. In *Bank of America, N A. v. Barr*, 2010 ME 124, 9 A.3d 816, the Maine Supreme Judicial Court wrote:

> To admit a business record pursuant to Rule 803(6), the party offering the evidence must lay a proper foundation by presenting testimony of 'the custodian or other qualified witness' showing that: . . . (4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

*Id.* ¶ 8 (citing *State v. Nelson*, 2010 ME 40, ¶ 9, 994 A.2d 808); *but see* RICHARD H. FIELD & PETER L. MURRAY, MAINE EVIDENCE at 430 (2000 ed.) ("The Federal Rule is substantively the same as the Maine Rule with respect to subparts 1-7 . . . .").

At the same time, the rationale for Maine's stricter interpretation of the business record exception appears to be the Maine Supreme Judicial Court's concern about double hearsay. *Beneficial Maine Inc. v. Carter*, 2011 ME 77, ¶¶ 15-17, 25 A.3d 96. By contrast, the federal courts are slightly more relaxed when the business records are "integrated." The Court does need to resolve whether the distinct burden allocations make a meaningful difference in the contrasting state and federal approaches to their interpretations of the respective versions of Rule 803(6) because as a federal court, the procedural federal, not state, rules of evidence must apply.

unrecorded payments. Ms. Jones' only arguments about the trustworthiness of the records were sharp but ultimately unsuccessful attempts to poke immaterial holes. The amount due is a material fact for contract claims, and the records are perhaps the only probative evidence Caliber can offer to prove that material fact. Finally, admitting the spreadsheet entries serves the purposes of the Rules of Evidence and the interests of justice. There is no real question here but that Ms. Jones took out a loan from U.S. Bank's predecessor and that she has not paid the loan in accordance with its terms.

The Court finds the financial records meet the requirements for admissibility under both Rule 803(6) and Rule 807 and are reliable and unrebutted. Accordingly, U.S. Bank is entitled to judgment on its underlying contract claims.

### D.    Count VI: Reformation of Mortgage

In Count VI of Plaintiff's Complaint, U.S. Bank sought to reform its mortgage deed because it inadvertently used an old legal description, instead of a new description that had been memorialized in a corrective warranty deed. *Compl.* at 10-11. The parties confirmed that they agree that the mortgage deed should be reformed to reflect the correct legal description.

## IV.    CONCLUSION

The Court GRANTS judgment in favor of the Defendant, Julia L. Jones, on Count I, and GRANTS judgment in favor of the Plaintiff, U.S. Bank, on Counts II, and III in the amount of $226,458.28.

The Court also GRANTS judgment in favor of the Plaintiff, U.S. Bank, on Count VI and ORDERS that the mortgage deed in this case be reformed to include the complete legal description set forth in Exhibit A of Plaintiff's Complaint.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of June, 2018